**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KENYATTA CURTIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-1676** |
| **BURL CAIN, WARDEN** | **SECTION "D" (6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2).  Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

## I.  PROCEDURAL HISTORY[1]

On May 12, 2000, co-defendants Kenyatta Curtis and Johnny Taylor were charged by bill of information with two counts of armed robbery, a violation of La. R.S. 14:64, and one count of aggravated battery,[2] a violation of La. R.S. 14:34, and an additional count of armed robbery with which Curtis alone was charged.  At their arraignment on May 18, 2000, both defendants pled not guilty.  Following a January 17, 2001 trial, the jury returned responsive verdicts, finding Kenyatta Curtis guilty on two counts of first degree robbery, one count of second degree battery, and one count of simple robbery.

On February 5, 2001, Kenyatta Curtis was sentenced to concurrent sentences of 35 years at hard labor, without benefit of probation, parole, or suspension of sentence, on each of his first degree robbery convictions, to a concurrent sentence of five years at hard labor on his second degree battery conviction, and to a consecutive sentence of five years at hard labor, with credit for time served, on his simple robbery conviction.

---

[1]A portion of the procedural history was taken from the Louisiana Fourth Circuit Court of Appeal's direct appeal decision, *State v. Taylor and Curtis,* No. 2001-KA-1993 (La. App. 4 Cir. Sept. 18, 2002) (unpublished opinion), a copy of which is contained in the State rec., vol. 1 of 4. In its opinion, the Louisiana Fourth Circuit spells petitioner's first name "Kenyata".  However, in his federal habeas corpus action, petitioner spells his first name "Kenyatta".  Accordingly, "Kenyatta" is the spelling which will be employed in the instant Report and Recommendation.

[2]In its opinion, *State v. Taylor and Curtis*, No. 2001-KA-1993 at p. 1, the state appellate court mistakenly provides that petitioner was charged with "one count of aggravated robbery", rather than one count of aggravated battery.  However, a review of the pertinent March 11, 2000 Bill of Information, a copy of which is contained in the State rec., vol. 2 of 4, reflects that petitioner was charged with one count of committing a battery with a dangerous weapon, i.e., aggravated battery, not with one count of aggravated robbery.

On September 18, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's convictions and sentences. *State v. Taylor and Curtis*, No. 2001-KA-1993 (La. App. 4 Cir. Sept. 18, 1002). Approximately a year later, on September 5, 2003, the Louisiana Supreme Court denied petitioner's writ application, thereby rendering his convictions and sentences final. *State v. Taylor and Curtis*, 852 So.2d 1023 (La. 2003).

In May, 2004, petitioner filed an application for post-conviction relief with the state district court.[3] Petitioner's efforts in this regard culminated on February 3, 2006, when the Louisiana Supreme Court denied his writ application. *State ex rel. Curtis v. State*, 922 So.2d 1159 (La. 2006).

On February 27, 2006, petitioner filed the instant petition for writ of habeas corpus, raising the following claims: 1) Evidence was insufficient to support his conviction; 2) "other crime evidence" was improperly used against him and a limiting jury instruction should have been provided in light of the reference made to "other crime evidence"; 3) he received an excessive sentence; 4) he was denied his right to testify on his own behalf; and, 5) his trial counsel was ineffective.[4]   In its response (rec. doc. 13), the State concedes that

---

[3]A copy of petitioner's post-conviction application is contained in the State rec., vol. 1 of 4.

[4]While a review of petitioner's supporting memorandum (rec. doc. 1) reflects that petitioner listed eight claims, petitioner's enumerated claims 2 and 5 both concern "other crime evidence" and, for this reason, have been combined in the instant Report and Recommendation into claim 2). Additionally, petitioner's claims 6, 7 and 8 all concern allegations regarding counsel's alleged ineffectiveness. Accordingly, for purposes of the instant Report and Recommendation, said claims

the instant petition is timely, but contests whether or not petitioner, with respect to the specific argument supporting his claim that "other crime evidence" was improperly used against him, exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).  However, under the provisions of 28 U.S.C. § 2254(b)(2), a court has the option, notwithstanding a habeas petitioner's failure to exhaust his state court remedies, to deny relief on alternative grounds.  Accordingly, this court declines to dismiss the instant action without prejudice for failure to exhaust and shall proceed to review the pertinent facts, then address the merits of petitioner's claims.

## II.  FACTS[5]

John Kechlar testified that he and his wife visited the City of New Orleans for the 2000 Mardi Gras celebration.  On March 7, 2000, at about 3:30 a.m., as Mr. Kechlar walked through the French Quarter, three men jumped him, pushed him into a deserted doorway, and robbed him at gunpoint of $300.00.  After his assailants fled, Mr. Kechlar returned to his hotel and contacted the police.  After Mr. Kechlar returned to his home in Ohio, he received a photographic lineup in the mail from Detective DeJean of the New Orleans Police Department ("NOPD").  Mr. Kechlar identified Kenyatta Curtis in the photographic lineup and in open court as the man who robbed him at gunpoint.

---

have been combined into claim 5).

[5]The facts are taken from the state appellate court's opinion on direct appeal, *State v. Taylor and Curtis*, No. 2001-KA-1993 (La. App. 4 Cir. Sept. 18, 2002) (unpublished opinion).

NOPD Officer Edward Davis and Detective Dennis DeJean testified that they investigated the Kechlar armed robbery. They interviewed Mr. Kechlar at his hotel several hours after the robbery. Mr. Kechlar gave the officers physical descriptions of the three assailants and the weapon, and told the officers that he could identify the gunman if he saw him again. Kechlar described the assailant that grabbed him around the neck as a black male, mid-twenties, about 5'5" tall. He described the second subject as a black male about 6' to 6'2" tall, weighing about two hundred pounds. Kechlar said the second subject produced a black steel semi-automatic weapon and pointed it at his forehead. The third subject was also a black male, who stood in the background, and acted as a lookout. Through his follow-up investigation, Detective DeJean developed Kenyatta Curtis as a suspect, and mailed a photographic line-up containing Curtis' picture to Mr. Kechlar in Ohio. Detective DeJean spoke with Mr. Kechlar by telephone as Kechlar viewed the line-up. DeJean testified that Kechlar positively identified Kenyatta Curtis as the man who robbed him at gunpoint.

Jimmy Lamarie and Patricia Farnsworth testified they were robbed at gunpoint as they sat in Mr. Lamarie's vehicle in the Beach Corner Bar's parking lot on Canal Street at approximately 1:00 a.m. on March 7, 2000. The couple stated that two men, later identified as Kenyatta Curtis and Johnny Taylor, approached them, walking quickly from around the corner of the building. Kenyatta Curtis shoved a gun in Mr. Lamarie's face and demanded money. Curtis then went to the passenger side of the Lamarie vehicle, where he

pointed the gun at Ms. Farnsworth and demanded her money and jewelry.  As Johnny Taylor rifled through Mr. Lamarie's pockets, confiscating about $200.00 from him, Curtis repeatedly pushed the gun into Ms. Farnsworth's head, screaming at her to give him her purse.  Mr. Lamarie pleaded with Curtis, "Don't hurt anybody ... [j]ust don't hurt anybody." Curtis hit Ms. Farnsworth in the head with the gun, knocking her unconscious, and then took her purse and jewelry.  After the attack, Mr. Lamarie drove Ms. Farnsworth to Mercy Hospital where she received several stitches to close her head wound.  In a later meeting with NOPD officers, Mr. Lamarie supplied physical descriptions of the two attackers.  Ms. Farnsworth, however, was unable to identify either of the attackers.

NOPD Detectives Justin Crespo and Cyril Davillier investigated the Lamarie/Farnsworth armed robbery.  On March 14, 2000, Crespo and Davillier presented a photographic lineup, which included a picture of Johnny Taylor, to Mr. Lamarie.  Lamarie immediately identified Taylor as one of the robbers.  The detectives prepared an arrest warrant for Taylor and a search warrant for the Taylor residence.  When Crespo and Davillier arrived at the Taylor residence, Taylor's mother told them her son was with Kenyatta Curtis. After searching the Taylor house, which did not result in the recovery of any weapon or stolen property, the detectives canvassed the Taylor neighborhood.  Crespo and Davillier observed Johnny Taylor seated in the passenger seat of a car driven by Kenyatta Curtis. Following a high-speed traffic chase, the officers pulled the pair over, and arrested them.  On

March 17, 2000, Detective Crespo presented a second photographic line-up to Mr. Lamarie from which he identified Kenyatta Curtis as the man who held a gun to his head.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210

F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ... and we

will give deference to the state court's decision unless it `was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.'"

*Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

## IV.  ANALYSIS

### Claim 1):  Evidence Was Insufficient to Support Conviction

Petitioner complains that insufficient evidence was submitted to support his

convictions because his convictions were based solely upon eyewitness identifications which

are notoriously unreliable.  When conducting a post-AEDPA sufficiency of the evidence

review, a federal court may grant relief only if it determines that the state court decision

rested on an "unreasonable application" of clearly established Federal law, as determined by

the Supreme Court, to the facts of the case.  *See* 28 U.S.C. § 2254 (d)(1).

In its analysis of petitioner's insufficiency of evidence claim, the Louisiana

Fourth Circuit Court of Appeal first set forth the applicable Supreme Court law, along with

corresponding state law, stating:

> The Due Process Clause of the Fourteenth Amendment protects a
> person accused of a crime from being convicted unless the State proves every
> element of the offense charged beyond a reasonable doubt.  This constitutional
> protection is the basis of a reviewing court's duty to determine the sufficiency
> of the evidence used to convict a defendant.  *State v. Monds*, 91-0589 (La.
> App. 4 Cir. 1/14/94), 631 So.2d 536.  In deciding whether evidence is
> constitutionally sufficient to support a conviction, the appellate court must

determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State v. Jacobs*, 504 So.2d 817 (La. 1987).

The appellate court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. *State v. Mussall*, 523 So.2d 1305, 1311 (La. 1988); *State v. Monds, supra* at p. 4, 631 So.2d at 539. If the reviewing court finds no rational trier-of-fact, viewing all the evidence from a rational pro-prosecution viewpoint, could have found the defendant guilty beyond a reasonable doubt, the conviction cannot stand constitutional muster. *Mussall, supra*. When identity is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its burden to establish every element of the crime charged beyond a reasonable doubt. *Jackson v. Virginia, supra*; *State v. Smith*, 430 So.2d 31, 45 (La. 1983).

The reviewing court, however, is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. *State v. Smith*, 600 So.2d 1319, 1324 (La. 1992); *Mussall, supra*. As noted by the Supreme Court, "the court is not to substitute its judgment of what the verdict should be for that of the jury, but at the same time the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt." *Mussall, supra*., citing 2 Charles Allen Wright, Federal Practice & Procedure 2d, Sec. 467, at 660-661 & n. 23 (2d ed. 1982). Although a conviction based solely on the identification testimony of one witness may withstand a sufficiency of the evidence test, it will do so only "[i]n the absence of internal contradiction or irreconcilable conflict with the physical evidence...." *State v. Gipson*, 26, 433, p. 2 (La. App. 2 Cir. 10/26/94), 645 So.2d 1198, 1200.

*State v. Taylor and Curtis*, No. 2001-KA-1993 at pp. 4-6.

The state appellate court next examined the specific claim at issue, namely, that there was insufficient evidence to support the convictions because "the State's case rested solely on the identifications ... by victims John Kechlar and Jimmy Lamarie. No physical

evidence or other corroborating evidence was submitted to establish ... guilt." *Id*. at p. 6.

Concentrating on said claim, the court examined applicable Supreme Court law regarding the

reliability of witness identification.

> In *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243 (1977), the Supreme Court set forth a five-factor test to determine whether an identification was reliable:  (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the assailant; (4) the level of certainty demonstrated by the witness; and, (5) the length of time between the crime and the confrontation.

*State v. Taylor and Curtis*, No. 2001-KA-1993 at p. 6 (citations omitted).  The Louisiana

Fourth Circuit then applied the above-law to the pertinent facts:

> Regarding John Kechlar's opportunity to view his assailant, although the crime occurred at night in a darkened doorway, Kechlar testified that he noticed the perpetrators following him for several blocks before the actual assault.  Furthermore, Kechlar had an unobstructed view of the perpetrator and looked the perpetrator in the eye as the perpetrator held a gun to his forehead. Kechlar testified that he clearly saw all three of his assailants.  Although Kechlar admitted to having two drinks that night, he testified that he drank earlier in the night and ate as well, more than several hours before the assault.
>
> As for Jimmy Lamarie's identification, he testified that he had no alcoholic beverages the night of the robbery.  Like Kechlar, Lamarie also had an unobstructed view of his assailants.  Lemarie [sic] testified that the lighting in the Beach Corner Bar parking lot was good.  Lamarie looked at Kenyatta Curtis' face for about five to ten seconds as Curtis pointed the gun at him....
>
> As for [the] degree of attention, both Kechlar and Lamarie testified they were frightened during the assaults; however, each victim said he paid close attention to his assailant's orders, as neither victim wanted to do anything to antagonize his assailant.
>
> The third factor to be considered is the accuracy of the witness' prior description of the offender.  Kechlar initially described Curtis as a black male,

6' tall and weighing 200 pounds.  On the day of his arrest, Curtis stood 6'1"
and weighed 165 [pounds]....

　　　　As to the level of certainty displayed at the confrontation, neither
Kechlar nor Lamarie expressed any reservations when they identified Curtis,
[as well as Taylor,] in the photographic lineups or in open court.

　　　　Finally, the period of time between the crimes and the initial
identifications was only a couple of weeks.  Given the circumstances of this
case, it appears the State negated any possibility of misidentification.  These
assignments of error are without merit.

*State v. Taylor and Curtis*, No. 2001-KA-1993 at pp. 6-8.

　　　　This court finds that the above does not represent an unreasonable application
of Supreme Court law to the pertinent facts.  *See Hill*, 210 F.3d at 485.  Accordingly, the
instant claim is without merit.

### Claim 2):  Improper Admission of Other Crime Evidence and Failure to Provide
　　　　　　Limiting Instruction

　　　　Petitioner claims his constitutional rights were violated by virtue of the
improper admission at trial of "other crime evidence" and the trial court's failure to give a
limiting or cautionary instruction with respect to the "other crime evidence".  In addressing
this matter on direct appeal, the Louisiana Fourth Circuit specifically noted the objectionable
testimony which the jury heard in connection with the State's direct examination of Detective
DeJean, the officer who investigated Mr. Kechlar's armed robbery.

Q.  Okay, how were you able to develop a suspect in this case?
A.  There was a pattern of armed robberies....

11

*State v. Taylor and Curtis*, No. 2001-KA-1993 at pp. 10-11.  At that point, defense counsel moved for a mistrial which the trial court, though admonishing the jury to disregard the above-statement by Officer DeJean, denied.  *Id*. at 11.

In rejecting petitioner's claim that his constitutional rights were violated as a result of the above exchange and that in the absence of a limiting or cautionary instruction jurors may have convicted him based on the assumption that by virtue of the "pattern of armed robberies", he "was a bad person ... charged with other robberies other than what he was on trial for," the state appellate court noted that after defense counsel's objection to Officer DeJean's remark, the following line of questioning ensued:

> Q.  Did you become aware of an armed robbery that occurred in the Third District at the Beach Corner [i.e.,  the Lamarie/Farnsworth armed robbery]?
> A.  Yes, I learned through communications with my fellow detectives in my unit that the robberies had occurred in the Third District.  And upon comparison of the individuals, who committed this robbery, I'm certain that there were similarities between the arrested subject, the defendant, and the subjects who committed the robbery on St. Philip Street [i.e., the Kechlar armed robbery] and the robberies which had occurred in the Third District.

*State v. Taylor and Curtis*, No. 2001-KA-1993 at p. 12.  Based upon the above line of questioning, the Louisiana Fourth Circuit concluded that "the jury could have interpreted 'pattern of armed robberies' to mean the two [i.e., the Kechlar and the Lamarie/Farnsworth robberies] involved in this trial."  *Id.*

Alternatively, the Louisiana Fourth Circuit Court of Appeal concluded that any

error committed was harmless.  Quoting the language of *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081 (1993) (emphasis original), to the effect that the proper analysis, in determining whether an error is harmless, "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error", the Fourth Circuit reasoned:

> There was overwhelming evidence of Curtis' guilt.  He suffered no prejudice from the implication that he was the person involved in the "pattern of armed robberies."  The jury heard the direct, uncontroverted testimony from two eyewitnesses to the crimes with which Curtis was charged, and who identified him.  The guilty verdict in this case was unattributable to any trial court error.  This assignment is without merit.

*State v. Taylor and Curtis*, No. 2001-KA-1993 at p. 13.

This court finds that the above-reasoning on the part of the state appellate court does not represent an unreasonable application of Supreme Court law.  *See Hill*, *supra*.  Accordingly, the instant claims for habeas corpus relief are without merit.

### Claim 3):  Excessive Sentence

Petitioner sets forth two arguments in support of his excessive sentence claim. First, petitioner argues that his sentences are excessive because the evidence was insufficient to support his convictions.  However, based upon the reasoning set forth above,[6] this court

---

[6]*See* discussion *supra* at pp. 9-11.

has determined that the evidence was not insufficient to support petitioner's convictions. Accordingly, the instant argument is without merit.

Second, in support of his excessive sentence claim, petitioner "adopt[s] the arguments urged by the appellate counsel for the accused as urged in the appellate brief."[7] A review of the pertinent appellate brief,[8] reflects the citation of only state law in support of petitioner's excessive sentence claim.  It is well established that federal habeas review is limited to questions of constitutional dimension.  *See generally Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Castillo v. Johnson*, 141 F.3d 218, 222 and 224 (5th Cir.), *cert. denied*, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).  Arguments that a trial court violated state law "do not constitute an independent basis for federal habeas relief.  *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir.), *cert. denied*, 524 U.S. 947, 118 S.Ct. 2364, 141 L.Ed.2d 731 (1988), *citing Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law") (quotation omitted).  Further, a review of the pertinent appellate court opinion reflects that there was no violation of state law in connection with petitioner's sentencing.  As the Louisiana Fourth Circuit noted below, the trial court gave ample justification for its

_____

[7] *See* Federal rec., doc. 1, petitioner's supporting memorandum at p. 10.

[8] A copy of petitioner's state appellate brief is contained in the State rec., vol. 2 of 4.

sentencing of petitioner.

The Court is aware of the fact that these are Mr. Curtis' first convictions.  The Court is also aware of the fact that he's started off his criminal career with a real bang.  It's this Court's belief [that this] is the third most serious offense that an individual can commit against other individuals....  This is the type of thing you hear two people who live in this city were out enjoying themselves at a local establishment and walked out and get robbed.  The woman was pistol-whipped.  Gets her skull crushed and needs stitches in her head....  The Court would also note that Mr. Curtis has been convicted by the jury in the same case for the crime of simple robbery of none other than a tourist who came to New Orleans spending his own money with his wife.  He came to enjoy the French Quarter and instead got robbed in the middle of the Quarter in the middle of the night.  The jury found Mr. Curtis guilty of that, also.  That also is the type of thing that, crime that just kills this city.

So the Court's specifically looking at this under the provisions of Article 894.1.  The Court believes that what he did was extremely, as I said, serious.  The third most serious offense anybody can commit, and committed it in a very cruel and heinous manner.  The facts show that one of the victims, the gentlemen [sic] had gotten out of the car, had begged Mr. Curtis, who had a gun, to just take everything they had and leave us alone.  Just don't hurt anybody.  Please don't hurt the woman....  The woman's giving up a three-karat diamond ring off of her finger, but not doing it quick enough for Mr. Curtis.  So then he pistols whips her and crushes her skull, and ultimately takes the three-karat diamond ring that she had gotten from her grandmother.

Mr. Curtis showed absolutely no compassion for his victims in committing this crime.  The Court sees no reason that it should show him any compassion other than the fact that this is his first conviction.  That being the fact, the Court is not going to give him the maximum sentence because those are reserved for the most historically career criminals.  This Court believes because of the seriousness of the offenses he committed, the Court's going to give him a substantial sentence....

*State v. Taylor and Curtis*, No. 2001-KA-1993 at p. 16.

### Claim 4):  Denied Right to Testify on His Own Behalf

Petitioner contends that his constitutional right to testify on his own behalf was violated.   According to petitioner, he wanted to testify to refute the eyewitnesses' identifications of him and to provide himself with an alibi, but counsel would not allow him to testify, "never inform[ing] petitioner that the right to testify or not to testify was [petitioner's] ultimate decision."[9]

"A criminal defendant has a constitutional right to testify in his own behalf; it is an aspect of his right to defend himself, a right held in *Rock v. Arkansas*, 483 U.S. 44, 51-53, 107 S.Ct. 2704, 2709-10, 97 L.Ed.2d 37 (1987), to be implicit in the Fifth, Sixth and Fourteenth Amendments." *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir. 1991) (citations omitted); *see also White v. Cain*, 2006 WL 3703240, *4 (E.D. La. 2006).   A habeas petitioner, however, has the burden of proving that he was denied this constitutional right. As the court explained in *Turcios v. Dretke*, 2005 WL 3263918, *6 (S.D.Tex. 2005), "a petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand.  *Underwood v. Clark,* 939 F.2d 473, 475-76 (7th Cir. 1991)."  The *Underwood* court specifically noted the potential problem posed if a habeas petitioner, arguing that counsel unconstitutionally denied him his right to testify, is not

---

[9] *See* Federal rec., doc. 1, petitioner's supporting memorandum at pp. 13 and 14-15.

required to satisfy his burden of proof.

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable.  It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial."  That's what Underwood did. His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, "I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf.  My attorney told me I could not testify.
>
> We agree with the First Circuit's ruling in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), that this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary-and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify-to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood*, 939 F.2d at 475-76.

In the instant matter, there is no evidence to prove petitioner's claim other than his statement to the effect that defense counsel denied him his constitutional right to offer testimony at trial.  "Standing alone, such self-serving statements cannot be allowed to succeed or the criminal judicial process would become unworkable." *Turcios*, 2006 WL at *6, citing *Underwood*, 939 F.2d at 475-76.  Accordingly, the court finds that petitioner has failed to meet his burden to establish that he is entitled to habeas corpus relief.

17

Additionally, the Fifth Circuit has provided "that where the defendant contends that his counsel interfered with his right to testify, the 'appropriate vehicle for such claims is a claim of ineffective assistance of counsel.'" *U.S. v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002), *cert. denied*, 541 U.S. 1031, 124 S.Ct. 2096, 158 L.Ed.2d 713 (2004), *quoting Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (quotation omitted).   The seminal case for adjudicating a habeas petitioner's ineffective assistance of counsel claim is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), which places on petitioner the burden of demonstrating not only that his counsel's performance was deficient, but also that he was prejudiced as a result of counsel's deficient performance.   If a court finds that a petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.   *Id*.

Under the deficient performance prong of the *Strickland* test, "... it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993),quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.   A counsel's decision regarding whether to place a criminal defendant on the witness stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight." *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985).   "'An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995), *cert. denied*, 516 U.S. 1165, 116 S.Ct. 1056, 134

18

L.Ed.2d 201 (1996), quoting *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995), *cert. denied*, 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 893 (1997).  To prove prejudice under the *Strickland* standard, a petitioner "... must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Petitioner, in conjunction with his allegation that he was unconstitutionally deprived of his right to testify, raises an ineffectiveness claim.  Specifically, petitioner argues:

> [H]is defense attorney, Mr. Guy Lillian, was ineffective for not putting on a defense because counsel precluded petitioner from being able to testify [on] his own behalf.  Petitioner maintains that he advised his attorney prior to the defense resting its case that he wanted to take the stand in his defense. Without taking petitioner's advice, defense counsel chose not to put forth a defense.[10]

However, the content of petitioner's testimony, had he been allowed to take the witness stand, would have been that the eyewitnesses' identifications of him as the perpetrator of the armed robberies were incorrect and that, during the time when the robberies took place, he was in Atlanta, Georgia.  The court finds that such self-serving testimony fails to satisfy petitioner's burden of showing that it is reasonably probable that his testimony would have changed the result of his proceeding.  Accordingly, petitioner's ineffective assistance of

---

[10]*See* Federal rec., doc. 1, petitioner's supporting memorandum at p. 12.

counsel claim, in connection with counsel's alleged refusal to allow him to testify, is without merit.

### Claim 5):  Ineffective Assistance of Counsel

Petitioner argues that counsel was ineffective due to his failure to object to the trial court's failure to provide a limiting or cautionary instruction in response to Officer DeJean's direct examination reference to "a pattern of armed robberies".[11]  Petitioner further argues that counsel was ineffective due to his failure to investigate, subpoena and call witnesses, specifically, petitioner's girlfriend, Aliska Gilton, petitioner's brother, Henry Curtis, and petitioner himself, all of whom would allegedly have testified that they were in Atlanta, Georgia at the time the pertinent robberies took place.

As noted earlier, to prove ineffective assistance of counsel for the purpose of attaining habeas corpus relief, a petitioner must prove that counsel's performance was deficient and that he was prejudiced by counsel's deficiency.  *See Strickland*, *supra*.  As shown below, petitioner has failed to make the requisite prejudice showing.

First, the failure to call particular witnesses to offer testimony at trial is not *per se* prejudicial to the point of warranting habeas relief.  *See generally Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("complaints of uncalled witnesses are not favored, [in federal habeas review] because the presentation of testimonial evidence is a matter of trial

---

[11]*See* discussion *supra* at pp. 11-12.

strategy and because allegations of what a witness would have testified are largely speculative"). In *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985), the Fifth Circuit noted that for a petitioner to show prejudice under *Strickland*, he must show that the testimony of the witnesses would have been favorable and that the witnesses would have testified at trial. Petitioner must show a reasonable probability that the uncalled witnesses would have made a difference in the result. *Alexander*, 775 F.2d at 603. There is a strong presumption that the failure of petitioner's counsel to call witnesses is a strategic choice. *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66.

Petitioner argues that his testimony, along with the testimony of his girlfriend and his brother, would have made a difference in the result of his proceedings since the case against him was based solely upon "the identification[s] made by the victims, which petitioner maintains were unreliable because the victims had been drinking immediately prior to the assaults and/or their view of their attackers was obscured."[12] Petitioner, however, is mistaken in this regard since, as the Louisiana Fourth Circuit noted, one of the victims, Jimmy Lamarie, "testified that he had no alcoholic beverages the night of his robbery", *State v. Taylor and Curtis*, No. 2001-KA-1993 at p. 7, and the other victim, John Kechlar, while admitting "to having two drinks that night", "testified that he drank earlier in the night and ate as well, more than several hours before the assault." *Id*. Further, both victims testified that they had

---

[12]*See* Federal rec., doc. 1, petitioner's supporting memorandum at p. 31.

unobstructed views of their attackers.  Kechlar explained "that he noticed the perpetrators following him for several blocks before the actual assault" and "looked the perpetrator in the eye as the perpetrator held a gun to his forehead." *Id*. at 6.  Similarly, Lamarie "testified that the lighting in the Beach Corner Bar parking lot [where the robbery took place] was good" and he "looked at Kenyatta Curtis' face for about five to ten seconds as Curtis pointed the gun at him." *Id*. at 7.  Accordingly, the court finds, in light of the strong eyewitness testimony offered against him, that petitioner has failed to meet his burden of showing a reasonable probability that the alleged testimony of the uncalled witnesses would have made a difference in his proceedings.

Petitioner has likewise failed to meet his burden of proving that he was prejudiced by virtue of counsel's alleged deficiency in failing to object to the trial court's failure to give a limiting or cautionary instruction in response to Officer DeJean's testimony regarding "a pattern of armed robberies."  As noted earlier, in light of Officer DeJean's testimony, directly following his reference to "a pattern of armed robberies", regarding the second robbery for which petitioner was standing trial, the Lamarie/Farnsworth robbery, "the jury could have interpreted "pattern of armed robberies" to mean the two involved in [the pertinent] trial." *Id*. at 12.  Additionally, the Louisiana Fourth Circuit specifically determined, given the "overwhelming evidence of Curtis' guilt" in the form of the "uncontroverted testimony from two eyewitnesses to the crimes ... who [unequivocally] identified him [as the perpetrator]", that petitioner "suffered no prejudice from the implication

that he was the person involved in the "pattern of armed robberies."  *Id*. at 13.

Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Kenyatta Curtis, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this   25th   day of _____January_____, 2008.


LOUIS MOORE, JR.

United States Magistrate Judge